# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| CK FRANCHISING, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:12-cv-411 |
| COMFORT KEEPERS, INC. and CATHERINE GRAHAM, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is Plaintiff CK Franchising's Motions for Default Judgment as to Permanent Injunction and as to Money Damages. (DE 11; DE 12.) For the reasons explained below, the Motion for Default Judgment as to Permanent Injunction (DE 11) is **GRANTED**, but the Motion for Default Judgment as to Money Damages (DE 12) shall **REMAIN UNDER ADVISEMENT** until I can conduct a hearing pursuant to Rule 55(b)(2) to determine the appropriate amount of statutory damages to assess against Defendants Comfort Keepers, Inc. and Catherine Graham.

## BACKGROUND

CK Franchising is an Ohio franchisor that grants its franchisees the right to use its "Comfort Keepers" trademark (as well as various related trademarked phrases) while providing home health care services. (DE 1 at 1.) CK Franchising currently licenses 21 franchisees in Indiana, including one in South Bend. (*Id.* at 6.) Comfort Keepers, Inc. is an Indiana corporation domiciled in South Bend. (*Id.* at 1.) It provides similar services to those offered by CK Franchising's franchisees. (*Id.*) Catherine Graham is the shareholder and principal of Comfort Keepers, Inc. (*Id.* at 2.)

On June 6, 2012, CK Franchising sent a cease and desist letter advising Graham and Comfort Keepers, Inc. that they were infringing on the "Comfort Keepers" trademark and demanding that they stop this infringement. (*Id.* at 9; DE 1-8.) CK Franchising sent a second and similar cease and desist letter on June 28, 2012. (DE 1 at 9-10; DE 1-9.) At this point, Graham left a voicemail for one of CK Franchising's attorneys indicating that she wouldn't stop using the Comfort Keepers name. (DE 1 at 10; DE 1-10.) Another CK Franchising attorney sent a third cease and desist letter on July 12, 2012. (DE 1 at 10; DE 1-11.) Subsequent to that, Comfort Keepers, Inc. removed a website (httP://www.comfortkeepersinc.com) that it previously had been using to advertise its services. (DE 1 at 10.)

There was no other response from Graham or Comfort Keepers, Inc., and CK Franchising, Inc. filed its Complaint on August 1, 2012. (*Id.* at 1 *et seq.*) Neither Comfort Keepers, Inc. nor Graham have answered or otherwise appeared before me. Default was entered on September 24, 2012 (DE 10), and CK Franchising moved for default judgment on October 2, 2012. (DE 11; DE 12.) It has filed two motions, one asking that I enter an injunction barring Comfort Keepers, Inc. and Graham from infringing upon its trademark, and one asked for $100,000 in statutory damages plus an additional $14,000 or so in costs and legal fees. (*Id.*)

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default judgment. *See* Fed. R. Civ. Pro. 55; *Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339-40 (7th Cir. 2004). Prior to obtaining a default judgment under Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *See Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.,* 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005). Under Rule 55(a), the clerk is to enter the default of a party

against whom a judgment is sought when that party has failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55(a). Because the clerk already has entered a default in this case, I may now enter a default judgment under Rule 55(b)(2), though I must exercise discretion in doing so. *See O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394, 1398 (7th Cir. 1993).

Courts may consider a number of factors when deciding a motion for default judgment. Those factors include the amount of money potentially involved, whether material issues of fact or issues of substantial public importance are present, whether the default is largely technical, whether plaintiff has been substantially prejudiced by the delay involved, and whether the grounds for default are clearly established or are in doubt. *See* 10A Wright *et al.*, Fed. Prac. & Proc. Civ. 3d § 2685 (3d ed. 2007); *Cameron v. Myers*, 569 F. Supp. 2d 762, 764 (N.D. Ind. 2008).

In this case, the grounds for default are well-established. Neither Comfort Keepers, Inc. nor Graham have answered the pending Complaint, entered appearances through counsel, or otherwise responded to CK Franchising's motions for default judgment. And underscoring this failure to respond or appear, CK Franchising or its counsel previously sent three cease and desist letters prior to even filing this lawsuit, one of which drew a response from Graham, and one of which seems to have caused her to take down a website. So she and her company must be aware of the infringement allegations pending against them. The default thus is not a simple technicality or an oversight – Graham and Comfort Keepers, Inc. appear to be stubbornly sticking their heads in the sand and hoping that the lawsuit will just go away. It won't. Therefore, the factors weigh in favor of default judgment.

A default judgment establishes, as a matter of law, that the defendant is liable to the plaintiff for each cause of action in the complaint. *See E360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602-06 (7th Cir. 2007) (undertaking the default judgment analysis). Here, this means that I must accept as true the assertion that Comfort Keepers, Inc. and Graham have wilfully infringed upon CK Franchising's "Comfort Keepers" trademark. As a result, I'll grant CK Franchising's request that I enter a permanent injunction barring Comfort Keepers, Inc. and Graham from continuing that infringement. Specifically, they are hereby ordered to: (1) Refrain from using the trademarked "Comfort Keepers" phrase to promote or conduct their home health care and/or skilled nursing business; (2) refrain from representing that they are associated with CK Franchising or any of its trademarked brands; (3) refrain from engaging in any business that might confuse individuals who think they are purchasing services from a "Comfort Keepers" franchisee; (4) destroy or appropriately alter all advertising and promotional materials displaying the "Comfort Keepers" name; and (5) cease using the [www.comfortkeepersinc.com](www.comfortkeepersinc.com) domain name and transfer it to CK Franchising.

The motion for default judgment concerning monetary damages is more difficult, however. Although the well-pleaded allegations of a complaint are taken as true, those relating to the amount of damages must be proved. *See Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994). Thus, upon considering a motion for default judgment, I may need to hold a hearing to determine damages. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

That's the situation I find myself in here. CK Franchising asks for statutory damages for "cyberpiracy" (also called "cybersquatting," *see* [http://law.yourdictionary.com/cyberpiracy](http://law.yourdictionary.com/cyberpiracy)

(defining cyberpiracy to consist of cybersquatting)) pursuant to 15 U.S.C. § 1117(d). This statute authorizes me to assess an amount between $1,000 and $100,000 instead of determining actual damages and profits. *Id.* That's quite a range, and CK Franchising asks for the very highest end of it. The request is a little concerning to me – although I am by no means condoning the behavior of Comfort Keepers, Inc. and Graham, this doesn't appear to be a particularly egregious case of cyberpiracy or cybersquatting, at least as classically defined. *See* 15 U.S.C. § 1125(d)(1)(A)(i); *see also* http://en.wikipedia.org/wiki/Cybersquatting (describing cybersquatting to be the registration of a domain name with the bad faith intent to profit from the goodwill of a trademark belonging to someone else, usually by selling that domain name back to the holder). Indeed, because Graham and Comfort Keepers, Inc. actually seem to be performing a home health care (and skilled nursing) service under the name "Comfort Keepers" (although they are certainly infringing on CK Franchising's trademark in doing so), it's questionable to me whether it's cyberpiracy or cybersquatting at all, except perhaps under the loosest definition of those terms. Most importantly, they appear to have taken down the infringing website in response to a cease and desist letter, so whatever cyber-related misconduct was going on previously has now stopped – though again, I stress that Comfort Keepers, Inc. and Graham seem to be continuing to infringe on CK Franchising's trademark.

      Furthermore, CK Franchising's default judgment motion doesn't really say why it believes that the maximum penalty permitted under 15 U.S.C. § 1117(d) is appropriate. Given this lack of explanation and the (potentially mitigating) circumstances surrounding Graham's and Comfort Keepers, Inc.'s conduct as it relates to cybersquatting, I'm not sure how to even go about determining the appropriate amount of statutory damages. So I won't. Instead, Rule

5

55(b)(2) authorizes me to conduct a hearing when I need additional information to determine the amount of damages or investigate any other matter before entering a default judgment, and I'll do that here. *See* Fed. R. Civ. Pro. 55(b)(2)(B) and (D). CK Franchising should come to this hearing able to explain – with supporting facts, if necessary – why I should award the maximum amount of damages permitted by the anti-cybersquatting statute instead of some lesser amount.

Finally, I should note that with respect to the attorney's fees, CK Franchising attaches affidavits from counsel stating a total of $14,733.85 in combined attorneys' feels and costs. (DE 11-1 through 11-3.) In cases where damages are capable of being ascertained from definite figures contained in the documentary evidence or in detailed affidavits, that evidence will be sufficient. *See O'Brien*, 998 F.2d at 1404 (citing *Dundee Cement Co.*, 722 F.2d at 1323); *E360 Insight*, 500 F.3d at 602. In this regard, CK Franchising's account of what it paid its attorneys seems reasonable. Therefore, I anticipate adding $14,733.85 to whatever statutory award I decide to be appropriate, but I can iron out those details once I make the damages determination.

## CONCLUSION

For the foregoing reasons, CK Franchising's Motion for Default Judgment as to Permanent Injunction (DE 11) is **GRANTED**. The Clerk is directed to enter **FINAL JUDGMENT** stating that Plaintiff is entitled to the relief ordered therein. The Motion for Default Judgment as to Money Damages (DE 12) shall **REMAIN UNDER ADVISEMENT** until I can conduct a hearing pursuant to Rule 55(b)(2) to determine the appropriate amount of statutory damages. That hearing is set for **November 14, 2012** at **9:30 AM** at the federal courthouse in **Hammond, Indiana**. If there is a conflict with that time or location, counsel shall

advise the Court as soon as possible.  The Clerk is directed to refrain from terminating this matter until that hearing is held.

**SO ORDERED**.

ENTERED: November 5, 2012.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
